# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| WILLIAM GRAHAM,  )  <br>     Plaintiff,  ) <br>                     ) <br> v.                      ) <br>                     ) <br> DAVID ROBINSON, et al.,  ) <br>     Defendants.  ) | Case No. 7:22-cv-00112 <br><br> By: Michael F. Urbanski <br> Chief United States District Judge |

## MEMORANDUM OPINION

William Graham, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that prison officials violated his rights under the First Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, by denying his requests for particular faith objects and holy days recognized by his religion. Defendants David Robinson, Bernard Morris, and Melissa Welch have filed a partial motion to dismiss to which Graham has responded. ECF Nos. 35 and 38. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

                **I.**       **Factual Background**

The following summary of the facts is taken from the amended complaint and the exhibits attached to the original complaint. The facts are presented in the light most favorable to Graham. See McCaffey v. Chapman, 921 F.3d 159, 163–64 (4th Cir. 2019) ("In considering a motion to dismiss under Rule 12(b)(6), a court 'accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . .'") (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)).

Graham is incarcerated at Green Rock Correctional Center, a Virginia Department of Corrections ("VDOC") facility in Chatham, Virginia. Am. Compl., ECF No. 32, at 2. He is a follower of Celtic Druidry, "a polytheistic, non-dualist, non-sexist, non-racist, scientific, holistic, and ecologically oriented faith embracing peacefulness and 'the love of ALL existences.'" Id. at 4. A core tenant of Druidry is that "the divine is experienced through direct connection and communion with the elements/nature." Id. Druids exercise their religion in a "sacred space developed by the collection and invocation of the elements and the Gods," and the space must include an alter containing the elements of earth, air, water, and fire. Id.

On December 9, 2019, Graham submitted the VDOC forms required to request approval of faith objects and/or activities, along with a "Statement of Need" to support his particular requests. Id. at 8; see also Compl. Ex. B, ECF No. 1-1. As relevant here, Graham requested the opportunity to observe certain Druidic holy days and associated dietary requirements, including the Winter and Summer Solstices. Am. Compl. at 8. He also sought approval for certain religious items, including a devotional candle to fulfill the requirement of fire in his sacred space. Id.; see also Compl. Ex. B. at 9. He noted that "tea light candles" would be an "acceptable substitute" and that "[i]t would be understandable if the candles for personal use in [a] living area are restricted to battery powered candles." Compl. Ex. B. at 9.

By letter dated October 21, 2021, VDOC Religious Advisor Bernard Morris, on behalf of Operations Support Manager Melissa Welch, notified Graham of the decision as to each requested item. Am. Compl. at 12; see also Compl. Ex. I, ECF No. 1-1. The letter indicated that Graham's requests had been considered by the Faith Review Committee ("FRC") on August 10, 2021, and that Chief of Corrections Operations David Robinson had signed the

2

docket on October 18, 2021. Compl. Ex. I. The correctional officials disapproved his requests to recognize the ritual and dietary requirements of the Winter and Summer Solstices. Am. Compl. at 13. They also disapproved his request for a candle on the basis that it would be a fire hazard. Id.

Graham alleges that "[t]he denial of [a] small candle, tea light size, as a personal religious item denies [him] the ability to establish The Fire, which becomes the gateway for the Shining Ones class of Kindred to receive offerings and return blessings during his personal religious rituals such as his Hearth Gods, monthly new moon Hearth Rite, and Holy Day Rituals when religious activities are canceled or he is unable to attend." Id. at 18. He also alleges that the denial of a small candle "prohibits him from giving offerings to the Shining Ones and receiving their blessings, health, comfort, and guidance and thereby severing their relationship and denying him entry into Tir na nOg for not keeping his oath." Id.

Graham asserts that members of other faith groups are permitted to observe the Winter Solstice and the Summer Solstice. Id. at 20. For instance, Tim Wright, an adherent of the Asatru religion, is permitted to observe both holy days and the related dietary requirements for that religion. Id. The same is true for Kenneth Crenshaw, an adherent of the Native American religion. Id. at 21.

## II. Procedural History

On March 1, 2022, Graham filed this action under 42 U.S.C. § 1983, alleging violations of his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and RLUIPA. On November 17, 2022, Graham filed an amended complaint against the defendants. As part of Claim II, Graham claims that the defendants violated his

rights under the First Amendment and RLUIPA by denying his request to have access to a candle. In Claim III, Graham claims that the defendants violated his right to equal protection by denying his requests to observe the Druidic ritual and dietary requirements associated with the Winter and Summer Solstices.

On December 8, 2022, the defendants moved to dismiss the foregoing claims under Federal Rule of Civil Procedure 12(b)(6). Graham has responded to the motion, and it is ripe for disposition.

### III.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While a complaint does not need "detailed factual allegations," merely offering "labels and conclusions," "naked assertion[s] devoid of further factual enhancement," or "a formulaic recitation of the elements of a cause of action will not do." Id. (alteration in original) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555, 557).

When a complaint is filed by a pro se litigant, it must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d

1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" Sakyi v. Nationstar Mortg., LLC, 770 F. App'x 113, 113 (4th Cir 2019) (quoting Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

### IV.    Discussion

#### A.    Candle-Related Claims under the First Amendment and RLUIPA

As part of Claim II, Graham claims that the defendants violated his rights under the First Amendment and RLUIPA by denying his request to have access to a candle for religious practices. The Free Exercise Clause of the First Amendment "requires prison officials to reasonably accommodate an inmate's exercise of sincerely held religious beliefs." Greenhill v. Clarke, 944 F.3d 243, 253 (4th Cir. 2019). "In order to state a claim for violation of rights secured by the Free Exercise Clause, an inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018). If that threshold showing is made, the inmate "must then show that the practice or regulation is not 'reasonably related to legitimate penological interests.'" Firewalker-Fields v. Lee, 58 F.4th 104, 115 (4th Cir. 2023) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

"RLUIPA provides more stringent protection of prisoners' free exercise rights, applying 'strict scrutiny instead of reasonableness.'" Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015) (quoting Lovelace v. Lee, 472 F.3d 174, 186 (4th Cir. 2006)). It "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." Holt v. Hobbs, 574

5

U.S. 352, 356 (2015). "The inmate bears the initial burden of showing a substantial burden of [his] religious exercise, but the government must establish that the burden is the least restrictive way to further a compelling governmental interest." Jehovah, 798 F.3d at 176–77. "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." Holt, 574 U.S. at 365 (internal quotation marks, brackets, and citation omitted).

In moving to dismiss Graham's candle-related claims, the defendants argue that "[t]his Court has already considered and concluded that a Plaintiff failed to state a claim under RLUIPA and the First Amendment regarding possession of a candle." Defs.' Br. Supp. M. Summ. J., ECF No. 36, at 8 (citing Dieppa v. Clarke, No. 7:18-cv-00455, 2019 WL 2997846 (W.D. Va. July 9, 2019)). In Dieppa, another follower of Celtic Druidry requested a personal candle to fulfill the requirement of fire in his sacred space, and the FRC denied the request for safety and security reasons, noting that a candle would be a fire hazard and that it could be used to mask the odor of drugs. Dieppa, 2019 WL 2997846, at *2. Although Dieppa plausibly alleged that not being allowed to possess a candle substantially burdened his ability to practice his religion, the court held that the denial of a candle in his cell did not state a claim under RLUIPA. Id. at *8. The court noted that "[t]he candle requested by Dieppa clearly poses a danger to himself and the facility" and that "[t]he need to prevent inmates' access to fire within living areas is an obviously justifiable reason to maintain institutional security and discipline and prevent threats to inmates' safety." Id. (internal quotation marks and citation omitted). Since a VDOC policy permits candles to be used during designated events under the

supervision of a staff member with a fire extinguisher, the court found that "allowing Dieppa to use candles at designated events with precautions in place is the least restrictive means for allowing him to practice his religion." Id. The court likewise held that the prohibition on candles for personal use was "reasonably related to legitimate penological interests under the First Amendment." Id. at *12. The defendants argue that Graham's candle-related claims should be dismissed on the same grounds. See Defs.' Br. Supp. M. Summ. J. at 8 ("Based on the analysis in Dieppa, this Court should likewise find that Graham failed to state a claim for relief under both RLUIPA and the First Amendment in relation to his request for personal access to a candle . . . .").

    The problem with the defendants' reliance on Dieppa is that Graham did not exclusively request permission to possess an open-flame candle in his cell. Instead, he made clear that a flameless, battery-powered candle would sufficiently meet his religious needs. See, e.g., Fox v. Maryland, No. 1:20-cv-2085, 2021 WL 4169493, at *3 (D. Md. Sept. 14, 2021) (noting that "battery operated tea lights have been offered as a safe, least restrictive appropriate alternative to open flame candles" in correctional facilities where candles are not authorized); Mounts v. Suthers, No. 1:99-cv-1167, 2012 WL 3245952, at *5 (D. Colo. Aug. 7, 2012) (observing that a prison regulation "permits inmates to purchase and use battery powered tea lights and authorizes their use in inmates' cells"). The alternative proposed by Graham was not addressed in Dieppa and is not discussed in the defendants' brief. Because the defendants seek dismissal solely on the basis of the court's decision in Dieppa, their motion will be denied with respect to Graham's claims related to the personal use of a candle for required religious practices.

### B. Equal Protection Claim

The defendants have also moved to dismiss Graham's claim that they deprived him of equal protection in violation of the Fourteenth Amendment by denying his request to observe the ritual and dietary requirements of the Winter and Summer Solstices, but permitting followers of the Asatru and Native American religions to observe those holy days. The court agrees with the defendants that the factual allegations in Graham's amended complaint are insufficient to state an equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'essentially a direction that all persons similarly situated should be treated alike.'" Grimm v. Gloucester Cnty. Sch. Bd., 972 F.3d 586, 606 (4th Cir. 2020) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 114, 1123 (9th Cir. 2013) (citing Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)). To establish a violation of the Equal Protection Clause, "a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 108 (4th Cir. 2011) (emphasis added). Graham's amended complaint does not contain sufficient allegations to satisfy either element.

With respect to the first element, Graham does not plausibly allege that he and his comparators are similarly situated or "in all relevant respects alike." Nordlinger v. Hahn, 505

U.S. 1, 10 (1992). For instance, while Graham alleges that the Winter and Summer Solstices are recognized as holy days by members of the Asatru and Native American religions, his amended complaint offers no indication as to whether the religions have similar ritual and dietary requirements. See Dieppa, 2019 WL 2997846, at *13 (noting, in dismissing a similar claim, that "[w]ithout a description of the holy days and their significance to the religion, the court is at a loss to determine whether the groups are similarly situated").

Additionally, with respect to the second element, Graham does not plausibly allege that any difference in treatment "was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." Maye v. Klee, 915 F.3d 1076, 1085 (6th Cir. 2019). In particular, a plaintiff must allege facts sufficient to show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Wilson v. United States, 332 F.R.D. 505, 525 (S.D.W. Va. 2019) (internal quotation marks and citation omitted). Thus, in this context, "discriminatory intent 'implies more than intent as volition or intent as awareness of consequences." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 819 n.2 (4th Cir. 1995) (quoting Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)). The plaintiff must show that the defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Id. (internal quotation marks and citation omitted).

The court agrees with the defendants that Graham has failed to plead facts sufficient to show that any unequal treatment was the result of intentional or purposeful discrimination.

9

None of the allegations in the amended complaint suggest that the defendants acted with the intent to discriminate against Graham because of his Druidic beliefs. See Burke v. Clarke, 842 F. App'x 828, 838 (4th Cir. 2021) (affirming the dismissal of an equal protection claim where the plaintiff's allegations failed to establish that the VDOC applied a policy with discriminatory intent against Rastafarians); see also Fluker v. King, 679 F. App' 325, 329 (5th Cir. 2017) (concluding that prison officials were properly granted summary judgment on an equal protection claim since the plaintiff did "not point[] to any evidence indicating that [the defendants'] motivation for treating him differently was invidious religious discrimination"). The pleading therefore fails to state a plausible violation of the Equal Protection Clause.

## V. Conclusion

For the reasons set forth above, the defendants' partial motion to dismiss, ECF No. 35, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: September 7, 2023

Digitally signed by Michael F. Urbanski Chief U.S. District Judge
Date: 2023.09.07 10:41:55 -04'00'

Michael F. Urbanski
Chief United States District Judge